

FILED ✓
ENTERED
_____ RECEIVED
_____ SERVED ON
COUNSEL/PARTIES OF RECORD

AUG - 5 2009

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TROY ANTHONY FOSTER,

    Petitioner,

vs.

THE STATE OF NEVADA, *et al.,*

    Respondents.

)
)
)
)
)
)
)
)
)
)
/

3: 05-cv-0448-ECR-VPC

**ORDER**

    This is a petition for writ of habeas corpus by a state prisoner pursuant to 28 U.S.C. § 2254. The matter is pending before the court for resolution on the merits.

### PROCEDURAL HISTORY

    On December 10, 1997, in Washoe County Justice Court, petitioner was arraigned on one count of first-degree kidnaping and four counts of sexual assault. (Document #15-2, Exhibit 4.) Following the preliminary hearing, petitioner was bound over on all counts. (Document #15-2, #15-3, #15-4.) Following a jury trial, petitioner was acquitted of kidnaping and the final count of sexual assault, but was found guilty of three counts of sexual assault. (Document #16-14, Exhibit 31.) The district court sentenced petitioner to three consecutive life terms, with parole eligibility after ten years on each term. (*Id.*)

1      Petitioner filed a timely notice of appeal. (Document #16-14, Exhibit 32.) The
2   Nevada Supreme Court dismissed petitioner's appeal. (Document #19-3, Exhibit 49.)

3      Petitioner filed a post-conviction petition for writ of habeas corpus in the Second
4   Judicial District Court in and for the County of Washoe ("district court"). (Docket #19-6, Exhibit
5   60.) The district court appointed petitioner's current federal counsel to represent him. (Docket #19-
6   9, Exhibit 68.) An evidentiary hearing was held on October 22 and 23, 2003. (Docket #17-6,
7   Exhibit 107.) The district court entered a written order denying the post-conviction petition for writ
8   of habeas corpus on January 28, 2004. (Docket #18-4, Exhibit 112.)

9      Petitioner appealed from the district court's denial of his petition. (Docket #18-5,
10  Exhibit 113.) The Nevada Supreme Court affirmed the district court's decision in a published
11  opinion. *Foster v. State*, 111 P.2d 1083 (Nev. 2005). (Docket #18-10, Exhibit 132.)

12      Petitioner filed the present action in this court on August 8, 2005. (Docket #1.)
13  Respondents filed their answer on June 7, 2007 (Docket #32), and petitioner filed his traverse on
14  January 18, 2008 (Docket #37). Petitioner filed a first supplemental authority in support of his
15  petition on April 10, 2009 (Docket #43).

16  **STANDARD IN FEDERAL HABEAS CORPUS PROCEEDINGS**

17      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty
18  Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
19  enactment. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied*, 522 U.S.
20  1008, 118 S.Ct. 586 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting *Drinkard*
21  *v. Johnson*, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997),
22  *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding
23  AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed on
24  August 8, 2005, after the enactment of the AEDPA, thus it is governed by its provisions.

25      This court may entertain a petition for writ of habeas corpus "in behalf of a person in
26  custody pursuant to the judgment of a State court only on the ground that he is in custody in violation

1   of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

2   The AEDPA altered the standard of review that a federal habeas court must apply
3   with respect to a state prisoner's claim that was adjudicated on the merits in state court. *Williams v.*
4   *Taylor*, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will
5   not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or
6   involved an unreasonable application of, clearly established Federal law, as determined by the
7   Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable
8   determination of the facts in light of the evidence presented in the State Court proceeding." 28
9   U.S.C. § 2254(d); *Lockyer v. Andrade*, 123 S.Ct. 1166, 1173 (2003) (disapproving of the Ninth
10  Circuit's approach in *Van Tran v. Lindsey*, 212 F.3d 1143 (9th Cir. 2000)); *Williams v. Taylor*, 120
11  S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply because that court
12  concludes in its independent judgment that the relevant state-court decision applied clearly
13  established federal law erroneously or incorrectly." *Lockyer*, at 1174 (citations omitted).  "Rather,
14  that application must be objectively unreasonable." *Id.* (citations omitted).

15  While habeas corpus relief is an important instrument to assure that individuals are
16  constitutionally protected, *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983);
17  *Harris v. Nelson*, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal
18  conviction is the primary method for a petitioner to challenge that conviction. *Brecht v.*
19  *Abrahamson*, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's factual
20  determinations must be presumed correct, and the federal court must accept all factual findings made
21  by the state court unless the petitioner can rebut "the presumption of correctness by clear and
22  convincing evidence." 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769
23  (1995); *Thompson v. Keohane*, 516 U.S. 99, 116 S.Ct. 457 (1995); *Langford v. Day*, 110 F.3d 1380,
24  1388 (9th Cir. 1997).

25  **DISCUSSION**

26  The only grounds pending before this court are grounds 1, 2, 3, 4, 12, 16, 18, 19, 20,

3

1  21, 22, and 23. The court dismissed grounds 5, 8 and 14 in an order entered April 24, 2006. (Docket

2  #25.) Several other grounds have been abandoned by petitioner due to lack of exhaustion. (Docket

3  #13, abandoning grounds 6, 7, and 9 to the extent that it is not subsumed within ground 8, 10, 11, 13,

4  15, and 17.)

5  Ground One

6      In ground one, petitioner contends that there was insufficient evidence to sustain his

7  convictions of four counts of sexual assault. Respondent disputes this contention.

8      The law on an insufficiency of the evidence claim is clearly established. The United

9  States Supreme Court has held that when reviewing an insufficiency of the evidence claim on

10  habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn

11  from it in the light most favorable to the prosecution, any rational trier of fact could find the essential

12  elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

13  Sufficiency claims are judged by the elements defined by state law. Id. at 324 n. 16.

14      In ruling on this contention in petitioner's direct appeal, the Nevada Supreme Court

15  first quoted the correct legal standard and then found as follows:

16      Here, the testimony at trial demonstrated that instead of going directly to
       Carson City, Foster turned off the road and disappeared without telling anyone,
17     including the victim, Michelle Bowens ("Bowens"), where he was going. Bowens
       clearly and unequivocally described how Foster assaulted her by forcing her to
18     perform fellatio, sodomizing her, and having vaginal sex with her. The jury heard
       testimony from witnesses offered by both the defense and the prosecution and then
19     determined "what weight and credibility to give various testimony." Hutchins v.
       State, 110 Nev. 103, 107, 867 P.2d 1136, 1139 (1994) (citation omitted). This court
20     noted in Hutchins that the "uncorroborated testimony of a victim, without more, is
       sufficient to uphold a rape conviction." Id. at 109, 867 P.2d at 1140. Therefore, we
21     conclude that this evidence, in addition to the incriminating physical evidence
       presented, when viewed in the light most favorable to the State, was more than
22     sufficient for a rational jury to find Foster guilty of three counts of sexual assault
       beyond a reasonable doubt.
23
   (Docket #19-3, Exhibit 49.)
24
       In claiming that insufficient evidence was presented to sustain his conviction,
25
   petitioner merely reviews the evidence in his favor. The court finds that in doing so, petitioner does
26
   not carry his burden of demonstrating that the Nevada Supreme Court's adjudication of the claim

4

1 "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

2 established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a

3 decision that was based on an unreasonable determination of the facts in light of the evidence

4 presented in the State Court proceeding." 28 U.S.C. § 2254(d).  Accordingly, this court concludes

5 that ground one provides no basis for habeas corpus relief.[1]

6 Ground Two

7       In ground two, petitioner contends that, "[t]the district court's repeated canvas of Mr.

8 Foster regarding his right to testify and his right to remain silent impaired Mr. Foster's ability to

9 knowingly and intelligently waive his right to testify on his own behalf."  Respondent disputes this

10 contention.

11       In addressing this contention in petitioner's direct appeal, the Nevada Supreme Court

12 ruled as follows:

13     Additionally, Foster asserts that the district court and defense counsel "talked Mr.
Foster out of testifying on his own behalf" by encouraging Foster to invoke his right
14 not to testify. "Criminal defendants have the right to testify on their own behalf under
the due process clause of the fourteenth amendment, the compulsory process clause of
15 the sixth amendment and the fifth amendment's privilege against self-incrimination."
Phillips v. State, 105 Nev. 631, 632, 782 P.2d 381, 382 (1989) (citing Rock v.
16 Arkansas, 483 U.S. 44, 49 (1987)). After an extensive review of the trial transcript,
we conclude that both the district court and Foster's counsel exhibited patience and
17 caution in dealing with this issue. Therefore, we conclude that the actions of both the
district court and defense counsel did not influence Foster's decision in any way.
18
(Docket #19-3, Exhibit 49.)
19
      In his traverse, petitioner argues that respondents misapprehend his contention, which
20
is that the totality of the circumstances in this case do not indicate that petitioner intelligently or
21
voluntarily waived his right to testify on his own behalf.  The court rejects this argument, as
22
respondents clearly responded to petitioner's contention, as quoted above.  Pursuant to 28 U.S.C. §
23
2254(e)(1), the factual findings of the state court are presumed to be correct, and this court finds that
24
petitioner has not carried his burden of overcoming that presumption.  Although petitioner argues
25

26

---

[1]The court notes that petitioner concedes this issue in his traverse.

5

1 │ that the district court had "no business" in engaging in a second canvas in regard to his intention to

2 │ testify, petitioner provides no United States Supreme Court authority forbidding such a practice. The

3 │ court concludes, therefore, that petitioner has not carried his burden of demonstrating that the

4 │ Nevada Supreme Court's adjudication of the claim "resulted in a decision that was contrary to, or

5 │ involved an unreasonable application of, clearly established Federal law, as determined by the

6 │ Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable

7 │ determination of the facts in light of the evidence presented in the State Court proceeding." 28

8 │ U.S.C. § 2254(d). Accordingly, this court concludes that ground two provides no basis for habeas

9 │ corpus relief.

10 │ Ground Three

11 │ Petitioner contends that the district court erred in not conducting a hearing concerning

12 │ the probability that a juror had learned of petitioner's in-custody status during the trial and/or the

13 │ probability that this information was shared with other jurors. Respondent disputes this contention.

14 │ In ruling on this issue on direct appeal, the Nevada Supreme Court held as follows:

15 │ Foster next asserts that the district court erred by failing to conduct a hearing
   │ to determine whether a juror had learned of Foster's in-custody status. At the time of
16 │ the incident, Foster's counsel specifically rejected the idea of the district court
   │ canvassing the juror. Furthermore, Foster cites no legal authority in support of his
17 │ argument. Because Foster did not object in the district court and fails to cite any legal
   │ authority in support of his argument, we conclude that Foster's argument lacks merit.
18 │ See Old Aztec Mine, Inc. v. Brown, 97 Nev. 49, 52, 623 P.2d 981, 984 (1931)
   │ (holding that a point not urged in the trial court is deemed to be waived and will not
19 │ be construed on appeal); Cunningham v. State, 94 Nev. 128, 130, 575 P.2d 936, 933
   │ (1978) (court declined to consider appellant's challenge because of failure to cite any
20 │ relevant authority in support of argument).

21 │ (Docket #19-3, Exhibit 49.)

22 │ As respondent argues, petitioner presents no Supreme Court authority requiring a trial

23 │ court to hold a hearing when a juror might have seen a criminal defendant in the presence of

24 │ identifiable sheriff's deputies. This court further notes that petitioner has provided no Supreme

25 │ Court authority that would have required the Nevada Supreme Court to rule in petitioner's favor

26 │ when defense counsel did not raise an objection at trial. The court concludes, therefore, that

1    petitioner has not carried his burden of demonstrating that the Nevada Supreme Court's adjudication

2    of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of,

3    clearly established Federal law, as determined by the Supreme Court of the United States;" or

4    "resulted in a decision that was based on an unreasonable determination of the facts in light of the

5    evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).   Accordingly, this court

6    concludes that ground three provides no basis for habeas corpus relief.[2]

7    Ground Four

8                In ground four, petitioner contends that the reasonable doubt instruction given in this

9    case impermissibly reduced the state's burden of proving sexual assault beyond a reasonable doubt.

10   *See* NRS 175.211.   As respondent argues, this court has upheld Nevada's statutory "reasonable

11   doubt" jury instruction on multiple occasions and the court's conclusion was affirmed on appeal. *See*

12   *Ramirez v. Hatcher*, 136 F.3d 1209 (9th Cir. 1998), *cert. denied*, 525 U.S. 967, 119 S.Ct. 415 (1998).

13   The court concludes, therefore, that petitioner has not carried his burden of demonstrating that the

14   Nevada Supreme Court's adjudication of the claim "resulted in a decision that was contrary to, or

15   involved an unreasonable application of, clearly established Federal law, as determined by the

16   Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable

17   determination of the facts in light of the evidence presented in the State Court proceeding." 28

18   U.S.C. § 2254(d).   Accordingly, this court concludes that ground four provides no basis for habeas

19   corpus relief.[3]

20   Grounds 12, 22 and 23

21              In grounds 12 and 23, petitioner contends that trial counsel's failure to request a

22   limiting jury instruction on the reason for the admission of evidence of uncharged prior misconduct

23   constitutes ineffective assistance of counsel in violation of petitioner's Sixth Amendment right to a

24   fair trial and Fourteenth Amendment right to due process.   In ground 22, petitioner contends that

25   _____

26      [2]Petitioner concedes this issue in his traverse.

        [3]Petitioner concedes this issue in his traverse.

                                                    7

1   appellate counsel was ineffective for failing to raise the issue of the admission of the uncharged prior

2   misconduct.  In his traverse, petitioner concedes that he is not entitled to relief on any of these

3   grounds separately, but argues that he is entitled to relief based on cumulative error as set forth in

4   these grounds and in his other grounds for relief.  Respondent disputes these contentions.

5          Ineffective assistance of counsel is based on the Sixth Amendment right to counsel,

6   which exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466

7   U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A claim for ineffective assistance must meet

8   the two-part test advanced by the Strickland court. First, petitioner must show that counsel "made

9   errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

10  Sixth Amendment. Second, [petitioner] must show that the deficient performance prejudiced the

11  defense. *Id*. at 687.  This two-part standard also applies to challenges to guilty pleas based in

12  ineffective assistance of counsel.  In the context of a guilty plea, a petitioner must show that (1) his

13  counsel failed to provide reasonable competent advice, and that (2) there is a reasonable probability

14  that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to

15  trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366 (1985).

16         In its published opinion affirming the district court's denial of petitioner's post-

17  conviction petition for writ of habeas corpus, the Nevada Supreme Court held in part as follows:

18         Prior to trial, counsel for Foster moved to have witness statements about Foster's
           alleged ties to prostitution excluded.  The district court denied the motion, citing to NRS
19         48.035 and finding the evidence to be admissible because it was significantly intertwined
           with the facts that formed the basis of the alleged crime. [Footnote omitted.]
20         In his post-conviction petition, Foster claimed that his trial counsel was ineffective for
           not requesting a limiting instruction respecting the evidence of pimping and prostitution as
21         prior uncharged misconduct.  Foster further claimed that his appellate counsel was ineffective
           for failing to challenge on appeal the district court's ruling admitting this evidence.
22         Foster's trial pre-dated our recent decision in Tavares v. State, which held that a
           limiting instruction is required unless the defense declines such an instruction for strategic
23         purposes. [Footnote omitted.]  Prior to Tavares, unless requested by the defense, no limiting
           instruction was required absent exceptional circumstances. [Footnote omitted.] This court
24         found such exceptional circumstances in Meek v. State, [footnote omitted] where the
           prosecution in a sexual assault trial presented testimony of the victim of a prior uncharged
25         assault by the defendant. [Footnote omitted.] This court held that the district court erred by
           failing to conduct a Petrocelli hearing, erred in admitting the evidence absent clear and
26         convincing evidence of its veracity, and erred in failing to give a jury instruction as to the
           proper, limited use of the testimony. [Footnote omitted.

8

Foster cites <u>Freeman v. Class</u> for the proposition that counsel's failure to request an appropriate instruction is deficient conduct and is prejudicial where the evidence of guilt is not overwhelming. But in <u>Freeman</u> [footnote omitted] as in <u>Meek</u>, the evidence admitted without a cautionary instruction was the central evidence in convicting the defendant. [Footnote omitted.]

Here, the decision of Foster's counsel not to seek a limiting instruction was a tactical one. The record shows that during a chambers conference at trial, Foster's counsel renewed his objection to the prior uncharged misconduct evidence and stated that he did not want to draw the jurors' attention to that evidence by objecting in open court. That objection was made to preserve Foster's right to appeal the court's decision on the motion in limine. Certainly defense counsel had a right to request a limiting instruction, but there was no requirement that such an instruction be given absent a request by counsel. [Footnote omitted.] We conclude that declining to request a limiting instruction here was a reasonable tactical decision by counsel and did not fall below an objective standard of reasonableness. Further, Foster has not shown any prejudice from the lack of a limiting instruction. There was abundant evidence of guilt, apart from the evidence of Foster's prior uncharged misconduct, and the evidence of prior misconduct was not central to the jury's finding of guilt. Given all the evidence, there is not a reasonable probability that the result of the proceeding would have been different even if a limiting instruction had been given.

Similarly, we conclude that Foster did not demonstrate prejudice resulting from appellate counsel's decision to omit any issues on appeal relating to the admission of this evidence. Given the other abundant evidence of Foster's guilt, such issues would not have had a reasonable probability of establishing reversible error. The district court did not err in rejecting these claims.

(Document #18-10, Exhibit 132.)

Petitioner raises several arguments that the admission of evidence regarding the uncharged prior misconduct was error under state law, which arguments this court finds to be without merit. Having found that petitioner has demonstrated no error on the part of the district court, this court must reject petitioner's claim of cumulative error. The court concludes, therefore, that petitioner has not carried his burden of demonstrating that the Nevada Supreme Court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  Accordingly, this court concludes that grounds 12, 22 and 23 provide no basis for habeas corpus relief.

Grounds 16 and 21

In ground 16, petitioner contends that his fifth, sixth and fourteenth amendment rights to a fair trial and to effective assistance of counsel on appeal were violated when the district court

9

1  refused to give petitioner's "theory of the case" instruction to the jury and appellate counsel failed to

2  preserve the issue properly.  In ground 21, petitioner contends that his sixth and fourteenth

3  amendment rights were violated when trial counsel was prejudicially ineffective for failing to seek a

4  proper "theory of the case" instruction on reasonable mistake of fact.  He also contends that the

5  district court erred in rejecting this contention.  Respondent disputes these contentions.

6        In its published opinion affirming the district court's denial of petitioner's post-

7  conviction petition for writ of habeas corpus, the Nevada Supreme Court held in part as follows:

8              Foster claims that his trial counsel was ineffective for failure to seek a proper
          theory of the case jury instruction on "reasonable mistake of fact as to consent." In
9          fact, Foster's trial counsel proposed such an instruction. [Footnote 39.]  The district
          court did not accept the instruction, however, finding instead that other instructions
10         adequately instructed the jury on this issue.  This court affirmed the district court's
          ruling in Foster's direct appeal, and the decision on that point is the law of this case.
11         [Footnote omitted.] Thus, Foster cannot demonstrate prejudice, i.e., that but for
          counsel's alleged error, the result of the trial would have been different.  Moreover,
12         the record demonstrates that Foster's counsel made reasonable efforts to include
          theory of the case instructions, and as such, his performance did not fall below an
13         objective standard of reasonableness.  Accordingly, the district court did not err in
          rejecting this claim.

14
              Footnote 39: The tendered instruction read as follows: "If you the jury decide that it
15         was reasonable, from the point of view of Mr. Foster, to conclude that [the victim]
          had manifested consent, you must find him not guilty."

16

17  (Docket #18-10, Exhibit 132.)

18        On direct appeal, the Nevada Supreme Court held in part:

19              At the conclusion of the trial, Foster also offered an instruction based on the
          defense's theory that Bowens consented.  Foster argues that the district court erred by
20         refusing to include this instruction.  After a careful review of the record, we conclude
          that the instruction offered by Foster was substantially covered by other instructions
21         given to the jury by the district court.  Therefore, we conclude that no error occurred.
          See Bolin v. State, 114 Nev. 503, 960 P.2d 784 (1998) (holding that a district court
22         does not err by refusing to give a jury instruction that is substantially covered by
          another instruction given to the jury); see also Barron v. State, 105 Nev. 767, 773, 783
23         P.2d 444, 448 (1989).

24
    (Docket #19-3, Exhibit 49.)
25
          In his traverse, petitioner argues at length that the Nevada Supreme Court did not
26
    understand the subtle differences between "consent," one of the *prima facie* elements under NRS

10

1   200.366, and "genuine, reasonable mistake of fact as to consent," which is a defense which defeats

2   the *prima facie* element of general intent of that statute.  The court has carefully reviewed

3   petitioner's argument and rejects it.  Contrary to petitioner's argument, there is no indication in

4   either of the above-quoted opinions of the Nevada Supreme Court that the court did not understand

5   the differences referred to by petitioner.  Further, the court finds that petitioner has not carried his

6   burden in regard to  the Nevada Supreme Court's finding that trial counsel "made reasonable efforts

7   to include theory of the case instructions, and as such, his performance did not fall below an

8   objective standard of reasonableness."   That is, the court finds that petitioner has not demonstrated

9   that the Nevada Supreme Court's adjudication of the claim "resulted in a decision that was contrary

10   to, or involved an unreasonable application of, clearly established Federal law, as determined by the

11   Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable

12   determination of the facts in light of the evidence presented in the State Court proceeding." 28

13   U.S.C. § 2254(d).  Accordingly, the court finds therefore that grounds 16 and 21  provide no basis

14   for habeas corpus relief.

15   <u>Ground 18</u>

16       In ground 18, petitioner contends that he received ineffective assistance of counsel

17   because trial counsel did not object to the inclusion of an unfavorable psychosexual evaluation, did

18   not object to Bowens' victim impact statement, and forwarded an unfavorable psychosexual

19   evaluation that he requested from another expert to the Division of Parole and Probation.

20       The Nevada Supreme Court addressed the issue as follows in denying petitioner's

21   post-conviction petition for writ of habeas corpus:

22         At the sentencing hearing, the trial court acknowledged receipt of a
psychosexual evaluation attached to a presentence investigation report by the Division

23       of Parole and Probation, as well as a second psychosexual evaluation provided by the
defense.  Foster told the court he had asked to participate in the evaluations, against

24       the advice of counsel.  Also against the advice of counsel, Foster had requested the
evaluations be provided to the court.  Foster was sentenced to serve three consecutive

25       terms of life with the possibility of parole.
        Foster argues that his trial counsel was ineffective for failing to move for

26       exclusion of the psychosexual reports introduced at sentencing.  However, Foster
himself testified that, against the advice of counsel, he insisted on participating in

1
2
3
4

both evaluations, and in having both reports provided to the trial court.  Under these circumstances, Foster will not be heard to complain about his trial counsel's performance.  Additionally, at the sentencing hearing, Foster's counsel attempted to portray Foster's insistence on participating in the evaluations and having them submitted to the court in a positive light, speaking to Foster's openness and willingness to cooperate with the court.  The district court did not err in rejecting this claim.

5
6
7
8
9
10
11
12
13
14

(Document #18-10, Exhibit 132.)   In his traverse, petitioner claims that his sentence is "outrageous," but states that he does not believe that he could overcome the presumption of correctness regarding the Nevada Supreme Court's factual finding on this ground for relief.  The court thus finds that petitioner has not demonstrated that the Nevada Supreme Court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).   Accordingly, the court finds therefore that ground 18 provides no basis for habeas corpus relief.

Ground 19

15
16
17
18
19

        In ground 19, petitioner contends that the district court abused its discretion in the handling of a *Batson* challenge to defense counsel's use of a peremptory challenge, and that he received ineffective assistance of appellate counsel because appellate counsel failed to raise the issue.

20
21
22
23
24
25
26

        The Nevada Supreme Court explained the factual background as follows:

        Foster contends that the district court erred in rejecting his claims that his trial counsel was ineffective for failing to properly object to the trial court's <u>Batson</u> decision and remedy and that his appellate counsel was ineffective for failing to assert any claims of error on appeal with respect to the trial court's resolution of the <u>Batson</u> issue.  We disagree.
        During jury selection, Forster's counsel exercised peremptory challenges to five women in the jury venire, prompting a <u>Batson</u> challenge from the prosecutor.  A hearing was held in chambers outside the presence of the jury.  After finding a pattern of gender discriminatory strikes by defense counsel, the trial court considered reseating the last woman juror, the only one of the challenged women remaining in the courthouse.  After a discussion with counsel, the judge announced that instead she would dismiss the entire venire and start jury selection over.
        Foster's counsel objected, stating that he did not think it was fair to Foster to

12

1    strike a venire that included an African-American male, which in counsel's opinion
     was a rarity in that court. Forster's counsel wanted the same venire, but he also did
2    not want the last woman juror reinstated, citing possible bias because the juror was
     aware that the defense had exercised a peremptory challenge striking her from the
3    panel. The trial court rule that Foster's counsel "couldn't have it both ways," and
     gave the defense the option of either choosing an entirely new venire, or utilizing the
4    same venire with the woman juror at issue reinstated with a curative instruction.
     After consulting with Foster, defense counsel chose to keep the venire, but preserved
5    his objection to reinstating the woman on the record. The State concurred with the
     decision to reinstate the juror instead of selecting an entirely new venire. It is not
6    clear from the record before this court if a curative instruction was ever given to the
     reseated juror.

7    (Document #18-10, Exhibit 132.)   On the merits of the issue, the Nevada Supreme Court ruled as
8
     follows in regard to trial counsel:
9
                   The record clearly establishes that Foster's trial counsel did object to the trial
10   court's decision and remedy. Thus, Foster's claim that his trial counsel was
     ineffective for failing to properly object to the trial court's decision is belied by the
11   record. Moreover, we conclude that Foster has failed to establish that the district
     court erred in finding a pattern of gender discriminatory strikes against women in the
12   venire or in reinstating the last juror as a remedy for the <u>Batson</u> violation. Thus,
     Foster has failed to demonstrate prejudice sufficient to establish that he is entitled to
13   relief on his claims of ineffective assistance of trial counsel.

14   *Id.*

15          Petitioner argues in his traverse that the district court's ruling regarding purposeful

16   discrimination as to the peremptorily challenged juror was an abuse of discretion. Petitioner argues

17   that the Nevada Supreme Court ignored existing United States Supreme Court precedent in

18   reviewing the district court's decision, and that its adjudication of the issue was plainly unreasonable

19   under 28 U.S.C. § 2254(d)(1).   Petitioner is mistaken.

20          In the case relied upon by petitioner, the United States Supreme Court explained the

21   analysis under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712 (1986) as follows:

22                 Under our Batson jurisprudence, once the opponent of a peremptory challenge has
     made out a prima facie case of racial discrimination (step one), the burden of
23   production shifts to the proponent of the strike to come forward with a race-neutral
     explanation (step two). If a race-neutral explanation is tendered, the trial court must
24   then decide(step three) whether the opponent of the strike has proved purposeful
     racial discrimination. Hernandez v. New York, 500 U.S. 352, 358-359, 111 S.Ct.
25   1859, 1865-1866, 114 L.Ed.2d 395 (1991) (plurality opinion); id., at 375, 111 S.Ct.,
     at 1874 (O'CONNOR, J., concurring in judgment); Batson, supra, at 96-98, 106 S.Ct.,
26   at 1722-1723. The second step of this process does not demand an explanation that is
     persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the

                                              13

1         facial validity of the prosecutor's explanation. Unless a discriminatory intent is
inherent in the prosecutor's explanation, the reason offered will be deemed race

2         neutral." Hernandez, 500 U.S., at 360, 111 S.Ct., at 1866 (plurality opinion); id., at
374, 111 S.Ct., at 1874 (O'CONNOR, J., concurring in judgment).

3

4         The Court of Appeals erred by combining Batson 's second and third steps into one,
requiring that the justification tendered at the second step be not just neutral but also

5         at least minimally persuasive, i.e., a "plausible" basis for believing that "the person's
ability to perform his or her duties as a juror" will be affected. 25 F.3d, at 683. It is

6         not until the third step that the persuasiveness of the justification becomes
relevant-the step in which the trial court determines whether the opponent of the

7         strike has carried his burden of proving purposeful discrimination. Batson, supra, at
98, 106 S.Ct., at 1723; Hernandez, supra, at 359, 111 S.Ct., at 1865 (plurality

8         opinion). At that stage, implausible or fantastic justifications may (and probably will)
be found to be pretexts for purposeful discrimination.

9

10 *Purkett v. Elem.*, 514 U.S. 765, 767-78, 115 S.Ct. 1769, 1770-71 (1995), *rehearing denied* June 26,

11 1995.  In the present case, petitioner argues that after defense counsel offered a gender-neutral

12 explanation for his peremptory challenge which was not inherently discriminatory, the district

13 court's analysis should have stopped.  In so arguing petitioner ignores the third step of the <u>*Batson*</u>

14 analysis, set forth above.  As stated in *Purkett*, if a race neutral explanation is tendered, the trial court

15 must go further in its analysis and decide whether purposeful discrimination has been shown.

16         After reciting the *Batson* analysis set forth above, the Nevada Supreme Court held as

17 follows:

18         Our review of the record reveals that the trial court properly considered the
State's <u>Batson</u> challenge under this three-step analysis and conducted a thorough

19         canvass of defense counsel's reasons for striking the challenged women.  Such
findings are given great deference on appeal, [footnote omitted] and we discern no

20         legal error or abuse of discretion in the trial court's finding of purposeful
discrimination.  Thus, Foster has not shown the prejudice necessary to establish any

21         entitlement to relief on his claims relating to this appellate counsel's failure to
challenge the trial court's finding of discrimination; such a challenge would not have

22         had a reasonable probability of success on appeal.

23 (Document #18-10, Exhibit 132.)  This court finds that petitioner has in no way demonstrated that

24 the Nevada Supreme Court's resolution of these issues concerning the *Batson* challenge  "resulted in

25 a decision that was contrary to, or involved an unreasonable application of, clearly established

26 Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision

1   that was based on an unreasonable determination of the facts in light of the evidence presented in the

2   State Court proceeding." 28 U.S.C. § 2254(d).   Accordingly, the court finds therefore that ground 19

3   provides no basis for habeas corpus relief.

4   Ground Twenty

5          In ground twenty, petitioner contends that trial counsel was prejudicially ineffective

6   for failing to investigate and present critical evidence which impeached a key portion of the victim's

7   story, and failing to present evidence supporting petitioner's version of the events.   Respondent

8   disputes this contention.

9          In addressing this issue, the Nevada Supreme Court held as follows:

10             Foster claims his trial counsel was ineffective for not investigating and
           providing more detailed evidence of the defense of accidental anal penetration.
11         Foster also claims in this respect that his counsel was deficient for not using photos of
           the car, as well as Foster's own testimony, to effectively rebut the victim's version of
12         events.  Foster's arguments are based on the flawed premise that the only reasonable
           defense theory was "accidental anal penetration."  We conclude that defense
13         counsel's tactical, strategic, decisions in these respects were not unreasonable.
           Defense counsel could have reasonably concluded that the jury would have rejected as
14         improbable any claim that injuries as severe as the victim's resulted from accidental
           contact.  Instead, defense counsel reasonably elected to present evidence supporting
15         the defense theory that the victim consented.

16   (Docket #18-10, Exhibit 132.).  The court must agree with respondents that this conclusion is

17   reasonable, and that petitioner's present attempt to now promote an alternative defense strategy does

18   not establish that the one adopted by trial counsel was fell below the *Strickland* standard of

19   reasonably competent counsel.  The court concludes, therefore, that petitioner has failed to carry his

20   burden of showing that the Nevada Supreme Court's decision on this issue "resulted in a decision

21   that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

22   determined by the Supreme Court of the United States;" or "resulted in a decision that was based on

23   an unreasonable determination of the facts in light of the evidence presented in the State Court

24   proceeding." 28 U.S.C. § 2254(d).   Accordingly, the court finds therefore that ground 20  provides

25   no basis for habeas corpus relief.

26

**CERTIFICATE OF APPEALABILITY**

In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9ᵗʰ Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9ᵗʰ Cir. 2006); *see also United States v. Mikels,* 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id. (quoting Slack,* 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The court will therefore deny petitioner a certificate of appealability.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

DATED this **5** day of **August**, 2009.

Edward C. Reed

UNITED STATES DISTRICT JUDGE

16